**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**MICHAEL A. SCOTT**

        **Plaintiff,**

    **v.**                                           **CIVIL ACTION NO. 2:06cv349**

**WFS FINANCIAL, INC., ET AL.**

        **Defendants.**

*__MEMORANDUM OPINION & ORDER__*

This matter is before the Court on Michael A. Scott's ("Plaintiff") motion for extension of time to file a response/reply, motion for summary judgment, and motion for a preliminary injunction, and WFS Financial, Inc.'s ("WFS") motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and motion for a more definite statement under Federal Rule of Civil Procedure 12(e).  Having carefully reviewed the parties' pleadings, the Court finds this matter ripe for judicial determination.  For the reasons below, Plaintiff's motion for extension of time to file a response/reply is **MOOT**.  The Court will **DEFER** ruling on Plaintiff's motion for summary judgment until the parties have had an adequate time to conduct discovery.  Plaintiff's motion for a preliminary injunction is **DENIED**.  WFS' motion to dismiss for failure to state a claim is **GRANTED IN PART** and **DENIED IN PART**.  WFS' motion for a more definite statement is **MOOT** as to Plaintiff's National Bank Act claim and **GRANTED** as to Plaintiff's usury claim.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 26, 2006, Plaintiff filed a complaint against WFS and Hall Automotive, Inc.,

alleging violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 et. seq. (2000) ("TILA") and

other assorted causes of action relating to Plaintiff's purchase of an automobile from Tidewater

Imports, Inc. ("Tidewater") in June 2005.  The Court has twice granted leave for Plaintiff to

amend his complaint.  Plaintiff's second amended complaint alleges violations of (1) TILA, (2)

the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. (2000) ("FCRA"), (3) the Racketeer

Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 et. seq. (2000) ("RICO"), and (4) the

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et. seq. (2000), as well as causes of action for

(5) actual and (6) constructive fraud, (7) breach of contract, (8) violations of Virginia usury law,

(9) economic duress, (10) tortuous interference with contract, and (11) violations of the Virginia

Consumer Protection Act, Va. Code Ann. §§ 59.1-196 et. seq. (2006) ("VCPA").  The named

defendants include WFS, Tidewater, KH Family Enterprises, Inc. ("KH"), and Hall Automotive,

LLC ("Hall") (collectively "Defendants").  On November 8, 2006, WFS filed an answer to

Plaintiff's complaint, denying all material allegations and asserting a cross-claim against

Tidewater for indemnification.

Plaintiff alleges that on June 23, 2005, he went to Hall Mazda, an entity owned by

Tidewater, in connection with the trade in of his current vehicle and the purchase of a new one.

Plaintiff states that he filled out a credit application in connection with the purchase of an

allegedly new 2005 Mazda Tribute ("the vehicle").  Plaintiff states that Tidewater's sales

consultant and general sales manager verbally represented that the vehicle was new.  The credit

application Plaintiff completed states that the vehicle was new with forty-two miles on it.

Plaintiff's credit application was conditionally approved, subject to Tidewater's ability to secure financing based upon the stated terms. These terms included a 20.00% annual percentage rate ("APR"). Plaintiff took the vehicle home on June 23, 2006 and traded in his old automobile. Plaintiff alleges that Tidewater's employees removed the new car "window label" without his knowledge or permission before he took possession of the vehicle. Plaintiff states that after taking possession of the vehicle, he discovered that it was not in fact new, but actually had more than two thousand one hundred miles on it and that it had been used as a "demo" vehicle at Tidewater.

On June 24, 2006, Tidewater informed Plaintiff that it had obtained financing from WFS. Plaintiff states that Tidewater failed to inform him that it was unable to secure financing based upon the terms from the previous day, and that the new financing was on different terms. Plaintiff returned to Tidewater and executed new contract terms, including a 20.99% APR. Plaintiff alleges that he was not provided any disclosure about the terms of the financing before consummation of the transaction. Plaintiff states that Tidewater assigned its interest in the purchasing documents to WFS on June 24, 2006. Plaintiff alleges that Tidewater and Hall are involved in a conspiracy where WFS purchases contracts from Tidewater at a lower interest rate than that stated in the contracts, so that Tidewater receives a portion of the allegedly inflated rate as a kickback.

Plaintiff further alleges that although the June 23, 2006 contract included a provision allowing him to cancel the purchase if financing could not be obtained on the stated terms, that provision was contradicted by another contractual condition that stated that a purchaser would be in default if he refused to sign documents or accept delivery of the vehicle. Plaintiff alleges that

3

Tidewater's employees induced him to enter into the initial contract on June 23, 2006, and then informed him on June 24, 2006 that the initial contract could not be cancelled and that he had to accept the new terms.

On September 6, 2006, before his second amended complaint was filed, Plaintiff filed a motion for extension of time to respond to WFS' previously filed motions to dismiss and for a more definite statement. In its September 12, 2006 order, the Court deferred ruling on this motion until the Court determined whether WFS would file amended motions based on Plaintiff's amended complaint. WFS subsequently filed a motion to dismiss and a motion for a more definite statement on September 22, 2006. Plaintiff's second amended complaint was filed on October 11, 2006. WFS has not filed amendments to its motions to dismiss or for a more definite statement. Plaintiff filed a response to these motions on November 14, 2006. In addition, Plaintiff filed a motion for summary judgment on October 27, 2006. WFS responded on November 8, 2006, and Plaintiff filed a reply on November 14, 2006. Finally, Plaintiff filed a motion for a preliminary injunction on November 15, 2006. WFS filed a response on November 29, 2006, and Plaintiff replied on December 5, 2006.

## II. LEGAL STANDARDS AND DISCUSSION

### A. Motion for Extension of Time to File a Response

On September 12, 2006, the Court deferred ruling on Plaintiff's motion for extension of time to file a response to WFS' motions to dismiss and for a more definite statement. WFS subsequently filed amended motions to dismiss and for a more definite statement on September 22, 2006. Plaintiff responded to these motions on November 14, 2006. The Court will consider

4

Plaintiff's response to these motions; therefore, Plaintiff's motion for an extension of time to file a response is moot.

**B.  Motion to Dismiss**

WFS has moved to dismiss the TILA, RICO, actual and constructive fraud, and VCPA claims against it.  Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted.  Although courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference, *see Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985), courts will favorably construe the allegations of the complainant, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), and assume that the facts alleged in the plaintiff's complaint are true.  *See McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).  A court will only grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim."  *Johnson v. Mueller*, 415 F.2d 354, 354 (4th Cir. 1969).

*1.  TILA*

WFS argues that as an assignee of Plaintiff's credit, it cannot be liable to Plaintiff under the TILA.  An assignee is liable for a violation of the TILA "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement."  15 U.S.C. § 1641(a).  "An assignee's sole duty under TILA is to examine the assigned documents for any irregularities or illegalities, even if the assignee has knowledge that a creditor's contracting practices may otherwise violate TILA."  *Irby-Greene v. M.O.R., Inc.*, 79 F. Supp. 2d 630, 633 (E.D. Va. 2000); *see also Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 709 (11th Cir.

1998) (holding that TILA does not allow "resort[ing] to evidence or documents extraneous to the disclosure statement" in determining an assignee's liability); *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998) (holding that TILA limits "the required inquiry to defects that can be ascertained from the face of the documents themselves.").

First, although Plaintiff attempts to challenge WFS' status as an assignee, there is no question that WFS is in fact an assignee. Plaintiff's own complaint states that "On June 24, 2005, Hall Mazda transferred and assigned its interest and rights in the new contractual documents to WFS financial." (Pl.'s Second Am. Compl. ¶ 16) Therefore, WFS can only be liable under the TILA if the alleged violations are apparent on the face of the documents assigned to it. There are no such apparent violations in the instant case. Plaintiff argues that the initial documents executed on June 23, 2005, with a 20.00% APR, were part of the terms of the obligation between the parties, and that the initial documents should have stated that the 20.00% rate was an estimate. However, the June 23, 2005 contract was never assigned to WFS. There is no APR-related violation apparent on the face of the June 24, 2005 documents that were actually assigned to WFS.

Plaintiff further argues that the sales price on the installment sales contract is incorrect because of a miscalculation of the Virginia sales tax. Virginia levies a three percent motor vehicle sales tax with a $35 minimum. Va. Code Ann. § 58.1-2402 (2004). This tax is levied against the sales price, including the processing fee. *Id.* § 58.1-2402(E). The tax in the present case is listed as $719.91. Contrary to Plaintiff's argument, this is the correct amount as it is three percent of the sales price of $23,598.00 plus the $399.00 processing fee.

Plaintiff also argues that because the vehicle was a demo, the "window form" on the vehicle became part of the contract, and as the window form states a manufacturer's suggested retail price ("MSRP") different from the price actually charged, the disclosure documents are consequently incorrect.  Assuming the window form is part of the contract, however, the MSRP is not the same as the negotiated, final price between the parties.  The disclosure document is not in violation of the TILA simply because it lists a price different from the MSRP.

Plaintiff argues that calculated monthly payments in the sales contract are based on an incorrect amount financed and therefore violate the TILA in that they represent an excess finance charge.  However, Plaintiff has failed to allege how the amount financed is incorrect on the face of the documents.  Even if the amount is incorrect as compared to the terms negotiated between the Plaintiff and Tidewater, such an error is not apparent on the face of the documents.

Plaintiff argues that the TILA requires the identity of the creditor to be the most conspicuously displayed information on the disclosure document.  15 U.S.C. § 1632 (a).  In the present case, the identity of the creditor is disclosed in a box on the very top right of the sales contract.  This clearly satisfies the TILA's requirements.

Finally, Plaintiff states that the sales contract violates the TILA because it identifies the creditor as Hall Mazda, a fictitious name used by Tidewater.  In order to conduct business under a fictitious name in Virginia, a corporation must file a certificate with the county clerk of court setting forth both the fictitious name and the name and address of the owner of the business.  Va. Code Ann. § 59.1-69 (2000).  The purpose of this statute is "to protect the public by giving information as to the person with which it deals and to afford it protection against possible fraud and deceit."  *Tate v. Atlantic Oak Flooring Co.*, 179 Va. 365, 367-68, 18 S.E.2d 903, 904 (1942).

7

Plaintiff has acknowledged that "Hall Mazda" is a registered fictitious name for Tidewater. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ¶ 1, Ex. 1)  Given this, the TILA disclosure listing "Hall Mazda" as the creditor is not a violation of the statute.  In conclusion, Plaintiff cannot point to any TILA violations apparent on the face of the documents assigned to WFS.  WFS' motion to dismiss Plaintiff's TILA claim against it is granted.

*2. RICO*

WFS has moved to dismiss Plaintiff's RICO count.  RICO creates civil liability for defendants engaging in "a pattern of racketeering activity."  18 U.S.C. §§ 1962, 1964.  A plaintiff must allege at least two predicate acts of racketeering to meet the "pattern" requirement.  *Id.* § 1961(5).  The United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") has stated that, "Alleging two of these 'predicate' acts is not in itself sufficient to satisfy the 'pattern of racketeering' requirement; rather, a plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes." *Anderson v. Foundation for Advancement, Educ., & Employment of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998).  The United States Supreme Court has held that in order "to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

In the present case, Plaintiff alleges that WFS and Tidewater committed mail fraud, wire fraud, and extortion as part of an illegal scheme to extort money from consumers.  Specifically, Plaintiff claims that the scheme began when WFS and Tidewater entered into a "Dealer Agreement" on or about May 30, 2001.  The Dealer Agreement provided that WFS would

8

approve the contract forms used by Tidewater in connection with vehicle sales.  Plaintiff claims that these forms were fraudulently misleading in that they contained a provision that said that a buyer could cancel a sales contract if financing could not be obtained on the stated terms, as well as a provision that said that a buyer would be in default for refusing to sign documents or accept delivery of the purchased vehicle.  Plaintiff claims that WFS and Tidewater designed the documents in this manner so that consumers would initially sign a sales contract, WFS would subsequently refuse financing on the initial terms, and then the consumers would be forced to sign new documents and accept less favorable financing terms or risk losing their traded-in vehicle and down payment.

Plaintiff has alleged mail fraud, wire fraud, and extortion as predicate acts.  Mail fraud, *see* 18 U.S.C. § 1341 (2000), and wire fraud, *see* 18 U.S.C. § 1343 (2000), require a showing of "(1) the existence of a scheme to defraud and (2) the use of the mails or wire communication in furtherance of the scheme."  *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006).  Extortion under 18 U.S.C. § 1951 (2000) and extortion under Virginia state law are also defined as racketeering activities.  18 U.S.C. § 1961(1); *see also Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1061 (4th Cir. 1984) (stating that extortion under Virginia law qualifies as a racketeering activity for RICO purposes).  A plaintiff in a RICO case alleging mail and wire fraud must comply with Federal Rule of Civil Procedure 9(b)'s requirements for pleading fraud with particularity.  *See, e.g.*, *Giuliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005);  *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004);  *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-73 (2d Cir. 1999); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989).  Rule 9(b) requires pleading the time, place, and content of the false representations, the person making

them, and what that person gained from them.  *Westinghouse v. Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  However, "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

As far as the fraudulent activities allegedly directed towards himself, Plaintiff has alleged enough particular circumstances with respect to the alleged fraud and extortion to put WFS on notice of the circumstances for which it will have to prepare a defense. *See id.*  Plaintiff has alleged that Tidewater's sales consultant, general sales manager, and business manager made fraudulent representations to him on June 23 and 24, 2005 in connection with a scheme to defraud involving documents approved by WFS.  Plaintiff alleges that WFS and Tidewater communicated specifically on June 24, 2005 with regard to the effort to defraud him.  Plaintiff has alleged a time frame for the scheme, specific persons and times in connection with the fraud committed against him, and the general contents of the alleged fraudulent communications between WFS and Tidewater.  Plaintiff has specifically pointed to the allegedly fraudulent portions of the sales contracts at issue.  In short, Plaintiff has fulfilled Rule 9(b)'s requirements as to the predicate acts against him.

Plaintiff, however, has failed to properly allege a RICO pattern.  The Fourth Circuit has held that, "What constitutes a RICO pattern is . . . a matter of criminal dimension and degree." *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987).  Congress intended "that RICO serve as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.*  "[A]n ordinary fraud [is] claim better prosecuted under

state law." *Anderson*, 155 F.3d at 506.  Although Plaintiff has alleged specific fraudulent acts

directed towards himself, his second amended complaint lacks the specificity required to

properly meet RICO's pattern requirement.  Plaintiff's complaint includes nothing more than

blanket assertions that Defendants are engaged in a widespread scheme to defraud other

customers in the same manner that he was allegedly defrauded.  Other than the alleged use of

common contract forms, Plaintiff points to no specific fraudulent conduct perpetrated by

Defendants apart from that directed towards Plaintiff on June 23 and 24, 2006.  The Fourth

Circuit has expressed that, "The pattern requirement . . . thus acts to ensure that RICO's

extraordinary remedy does not threaten the ordinary run of commercial transactions." *Menasco*,

866 F.2d at 683.  In essence, Plaintiff has alleged ordinary commercial fraud.  In order to

transform this fraud into a RICO scheme, Plaintiff must be more specific than simply alleging

that WFS has victimized other consumers.  WFS' motion to dismiss Plaintiff's RICO claim is

granted.

*3.  Actual and Constructive Fraud*

WFS reiterates its Rule 9(b) argument with respect to Plaintiff's actual and constructive

fraud claims.  In Virginia, the elements of actual fraud are:  "(1) a false representation, (2) of a

material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the

party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v.

Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).  Constructive fraud "requires proof that

a false representation of a material fact was made, innocently or negligently, and that the injured

party suffered damage as a result of his reliance on the misrepresentation." *Henderson v.

Henderson*, 255 Va. 122, 126, 495 S.E.2d 496, 499 (1998).  In addition, to support a claim of

11

constructive fraud "the evidence must show that the false representation was made so as to induce a reasonable person to believe it, with the intent that the person would act on this representation." *Id.*

As discussed above, Plaintiff has alleged that WFS and Tidewater fraudulently induced him to enter into the second sales contract on June 24, 2005 by means of misleading statements by Tidewater's sales personnel and intentionally misleading statements on the contract forms approved by WFS. Plaintiff has specifically pled the time and manner of the alleged fraudulent representations and has described their contents. Therefore, WFS' motion to dismiss Plaintiff's actual and constructive fraud claims is denied.

*4.  VCPA*

The Virginia Consumer Protection Act prohibits, among other practices, "Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . ." Va. Code. Ann. § 59.1-200(A)(14). WFS again argues that Rule 9(b) requires dismissal of Plaintiff's fraud-based claims. As discussed above, Plaintiff has adequately pled claims of fraud in connection with a consumer transaction. WFS' motion to dismiss Plaintiff's VCPA claim is denied.

**C.  Motion for a More Definite Statement**

Rule 12(e) of the Federal Rules of Civil Procedure authorizes a party to move for a more definite statement in a pleading if it is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . ." Rule 12(e), however, "must be read in conjunction with Rule 8, which establishes the general rules for pleadings." *Hodgson v. Virginia Baptist Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973). In imposing a liberal notice-pleading standard,

Federal Rule of Civil Procedure 8(a) requires: "(1) a statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment." *Id.* It is in the Court's discretion whether "a limited expansion of a complaint" is appropriate under Rule 12(e). *Id.* at 824.

WFS' motion for a more definite statement relates to Plaintiff's usury claim.[1] Under Virginia law, a creditor can charge a maximum of twelve percent interest, Va. Code Ann. § 6.1-330.55 (1999), unless the buyer and seller expressly agree on a different rate. Va. Code Ann. § 6.1-330.77. Plaintiff's complaint contains only an allegation of usury; it lacks any sort of explanation of the claim. Plaintiff has filed a sixteen page second amended complaint alleging eleven causes of action against multiple defendants, challenging multiple aspects of a vehicle purchase and associated credit transaction. Even under the liberal Rule 8(a) standard, Plaintiff is required to specify which aspects of this transaction allegedly give rise to the usury claim. Consequently, WFS' motion for a more definite statement as to Plaintiff's usury claim is granted.

**D. Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001) (stating that "[S]ummary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the

---

[1] WFS' motion also addresses Plaintiff's National Bank Act claim, but as Plaintiff's second amended complaint drops this cause of action, this portion of WFS' motion is moot.

law.").  In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

The Fourth Circuit has stated that, "As a general rule, summary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex*, 477 U.S. at 322).  "Federal Rule of Civil Procedure 56(f) permits a court to deny summary judgment or to order a continuance if the nonmovant shows through affidavits that it could not properly oppose a motion for summary judgment without a chance to conduct discovery."  *Id.*  The Rule 56(f) affidavit is meant "to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988), *quoted in Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).  A rule 56(f) affidavit should "specif[y] legitimate needs for further discovery." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).

WFS has responded to Plaintiff's motion for summary judgment by citing Rule 56(f) and providing a Rule 56(f) affidavit.  WFS states that the conference required under Federal Rule of

Civil Procedure 26(f) has not taken place in this case.  Federal Rule of Civil Procedure 26(d) provides that with a few exceptions, discovery cannot commence until the Rule 26(f) conference has occurred.  Formal discovery has not begun in this case.  Plaintiff claims that his TILA, VCPA, and fraud claims do not require further discovery, and that the Court should also be able to void the financing contract based on what is already before it.  Plaintiff has provided copies of relevant documents in his possession and his own affidavit.  WFS has not had the opportunity to propound discovery on Plaintiff, Hall, Tidewater, or KH.  At this stage of the litigation, WFS has nothing more than the Plaintiff's version of the transaction in question.  Therefore, the Court will defer ruling on Plaintiff's motion for summary judgment until all parties have had an adequate opportunity to conduct discovery.

**E.  Motion for a Preliminary Injunction**

Federal Rule of Civil Procedure 65 allows district courts the discretion to grant preliminary relief prior to the adjudication of the underlying dispute.  *Quince Orchard Valley Citizens Assoc., Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989).  In *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-95 (4th Cir. 1977), the Fourth Circuit established the standard for preliminary relief.  The *Blackwelder* hardship balancing test requires that the court consider: (1) the likelihood of irreparable harm to the movant if the preliminary injunction is denied; (2) the likelihood of harm to the nonmovant if the requested relief is granted; (3) the likelihood that the movant will succeed on the merits, and (4) the public interest.  *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002) (citing *Direx Israel, Ltd v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)).  Under the four-part inquiry, "the first two factors regarding the likelihood of irreparable harm to the plaintiff if [the preliminary injunction is] denied, and of

15

the harm to the defendant if [the injunction is] granted are the most important." *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997).  The plaintiff bears the burden of establishing that each of these factors supports granting the injunction.  *Id.*; *Technical Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984); *Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983).

In addition, the Fourth Circuit has stated that, "[T]he award of a preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981).  Furthermore, "[T]he harm necessary to justify issuance of a preliminary injunction be irreparable." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).  In general, the possibility of compensation through a judgment awarding money damages means that the harm is not irreparable.  *Id.*  A failure to make a clear showing of irreparable harm to the plaintiff is sufficient by itself to justify denial of a preliminary injunction. *Direx*, 952 F.2d at 812.

Plaintiff requests a preliminary injunction enjoining the enforcement of his contract to purchase the vehicle on June 24, 2005.  Plaintiff asserts that he will suffer irreparable harm if the financing contract continues to be enforced, and that Defendants will not suffer any harm under an injunction because their own fraud is the basis for voiding the contract.  Plaintiff argues that he will likely succeed on the merits and that it is in the public interest to enjoin a fraudulent contract.

Plaintiff has failed to establish show that he will suffer irreparable harm in the absence of an injunction.  Plaintiff's claims revolve around a vehicle purchase contract and alleged fraud in

16

the sale of the vehicle in question.  Plaintiff fails to make any showing that these claims cannot be fully compensated by a monetary award at judgment.  In addition, Plaintiff's delay in moving for an injunction supports the conclusion that Plaintiff's harm is not irreparable.  *See Quince Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (noting that delay can be "quite relevant" to balancing harms).  Plaintiff filed his first complaint on June 26, 2006, and did not file for an injunction until November 15, 2006.  There is no basis to conclude that Plaintiff is facing irreparable harm.  Therefore, Plaintiff's motion for a preliminary injunction is denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to for extension of time to file a response/reply is **MOOT**.  The Court will **DEFER** ruling on Plaintiff's motion for summary judgment until the parties have had an adequate time to conduct discovery.  Plaintiff's motion for a preliminary injunction is **DENIED**.  The Court **GRANTS** WFS' motion to dismiss Plaintiff's TILA and RICO claims and **DENIES** WFS' motion to dismiss Plaintiff's actual and constructive fraud and VCPA claims.  WFS' motion for a more definite statement is **MOOT** as to Plaintiff's National Banking Act claim and **GRANTED** as to Plaintiff's usury claim.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 18, 2007